IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

In re:

**ART & DENTISTRY, LLC**
**FDBA BEAM BRIGHT DENTAL, LLC,**          **CHAPTER 11**

    **DEBTOR.**                                 **CASE NO. 17-22579**

**TOYOTA LEASE TRUST,**

    **MOVANT,**

vs.

**ART & DENTISTRY, LLC,**

    **RESPONDENTS.**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

  Toyota Lease Trust ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to a **2015 Lexus RX350, VIN# xxxxxxxxxxx1132** (the "Property"), for all purposes allowed by the Motor Vehicle Lease Agreement and applicable law. In further support of this Motion, Movant respectfully states:

  1. A petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on September 20, 2017.

  2. Upon information and belief, the Movant is the lessor of a 2015 Lexus RX350 VIN# xxxxxxxxxxxx1132 which has been leased to the Debtor pursuant to a valid Motor Vehicle Lease Agreement dated April 11, 2015. A copy of the Motor Vehicle Lease Agreement and a copy of the evidence of Title establishing Movant's ownership interest are attached hereto as <u>Exhibit A</u>.

  3. As of October 23, 2017, the unpaid principal and interest balance due is $33,838.77 and the approximate outstanding amount of the Obligations less any partial payments or suspense balance is $33,838.77.

  4. The following chart sets forth the number and amount of payments due pursuant to the terms of the Motor Vehicle Lease Agreement as of October 23, 2017:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 3 | 08/11/2017 | 10/11/2017 | $537.35 | $1,612.05 |
| Less partial payments: | | | | ($0.00) |
| | | | **Total:** | **$1,612.05** |

5. As of October 23, 2017, the total arrearage/delinquency is $1,612.05, consisting of (i) the foregoing total of payments in the amount of $1,612.05, plus (ii) the following fees:

| Fee Description | Amount |
| --- | --- |
| N/A | $0.00 |

6. A contractual payment history is attached hereto as <u>Exhibit 1</u>.

7. The estimated value of the Property is $32,475.00. The basis for such valuation is: <u>NADA</u>, a copy of which is attached hereto as <u>Exhibit B</u>.

8. Cause exists for relief from the automatic stay for the following reasons:

    i. Movant's interest in the Property is not adequately protected.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay for all purposes allowed by applicable law and the Motor Vehicle Lease Agreement to enforce its remedies to obtain possession of the Property and any and all other collateral pledged under the Motor Vehicle Lease Agreement.

2. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3. For such other relief as the Court deems proper.

Dated: October 25, 2017.

                                              TOYOTA LEASE TRUST

                                              By: /s/Randa S Azzam
                                              Randa S. Azzam, Esquire, Bar No. 22474
                                              Kimberly B. Lane, Esquire, Bar No. 18513
                                              Samuel I. White, P.C.
                                              611 Rockville Pike, Suite 100
                                              Rockville, MD 20852
                                              Tel: (301) 804-3400
                                              Fax: (301) 838-1954
                                              RAzzam@siwpc.com

CERTIFICATE OF SERVICE

    I certify that on October 25, 2017, the foregoing Motion was served via CM/ECF on the Office of the US Trustee, and David E. Lynn, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid to Art & Dentistry, LLC, Debtor, 6500 Rock Spring Dr. Suite 110, Bethesda, MD 20817 and to the 20 largest unsecured creditors on the Debtor's mailing matrix, as listed on the attached mailing list.

                                              **/s/Randa S Azzam**
                                              Randa S. Azzam, Esquire
                                              Samuel I. White, P. C.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

**In re:**

| | |
|---|---|
| **ART & DENTISTRY, LLC** | |
| **FDBA BEAM BRIGHT DENTAL, LLC,** | **CHAPTER 11** |
| DEBTOR. | **CASE NO. 17-22579** |
| **TOYOTA LEASE TRUST,** | |
| MOVANT, | |
| vs. | |
| **ART & DENTISTRY, LLC,** | |
| RESPONDENTS. | |

**NOTICE OF MOTION AND OPPORTUNITY TO OBJECT TO MOTION
FOR RELIEF FROM THE AUTOMATIC STAY AND HEARING THEREON**

Toyota Lease Trust ("Movant"), has filed papers with the court seeking relief from the automatic stay of 11 U.S.C. §362(a) to enable it to proceed to enforce its remedies pursuant to its Motor Vehicle Lease Agreement referencing the subject property known as **2015 Lexus RX350 VIN# xxxxxxxxxxxx1132**. Your rights may be affected. You should read these papers carefully and discuss them with your lawyer, if you have one in this bankruptcy case. (If you do not have a lawyer, you may wish to consult one.).

If you do not want the court to grant the motion for relief from the stay, or if you want the court to consider your views on the motion, then by **November 8, 2017** (parties served by mail may add three 3 (additional days to the response deadline) you or your lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

| | |
|---|---|
| Randa S. Azzam | U.S. Trustee- Greenbelt |
| 611 Rockville Pike, Suite 100 | 6305 Ivy Lane,   Suite 600 |
| Rockville, MD 20852 | Greenbelt, MD 20770 |

If you mail a copy rather than deliver your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the Court will receive it by the date stated above.

The hearing is scheduled for **December 21, 2017 at 11:00 AM**, in the United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane Suite 300, Greenbelt, MD 20770, **Courtroom 3-C**.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE SERVED: October 25, 2017

By: /s/Randa S Azzam
Randa S. Azzam, Esquire, Bar No. 22474
Kimberly B. Lane, Esquire, Bar No. 18513
Samuel I. White, P. C.
611 Rockville Pike, Suite 100
Rockville, MD 20852
Tel: (301) 804-3400
Fax: (301) 838-1954
RAzzam@siwpc.com

## CERTIFICATE OF SERVICE

I certify that on October 25, 2017, the foregoing Notice of Motion was served via CM/ECF on the Office of the US Trustee, and David E. Lynn, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Art & Dentistry, LLC, Debtor, 6500 Rock Spring Dr. STE 110, Bethesda, MD 20817 and to the 20 largest unsecured creditors on the Debtor's mailing matrix, as listed on the attached mailing list.

**/s/Randa S Azzam**
Randa S. Azzam, Esquire
Samuel I. White, P. C.

| Fill in this information to identify the case: |
|---|
| Debtor name    Art & Dentistry, LLC |
| United States Bankruptcy Court for the: _____    District of Maryland |
|                                                                              (State) |
| Case number    17-22579 |

☐ Check if this is an amended filing

# Official Form 204
## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders                                                                                                                 12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Everbank Commercial Finance, Inc. 10 Waterview Blvd.,2nd Floor Parsippany, NJ 07054 | | Business financing | | $437,731.48 | $0.00 | $437,731.48 |
| 2 | Wells Fargo Practice Finance 2000 Powell Street, 4th Floor Emeryville, CA 94608 | | All of Debtor's property subject to security agreement | | $354,264.29 | $0.00 | $354,264.29 |
| 3 | Elizabethean Court Associates IV LP 10215 Fernwood Road Bethesda, MD 20817 | | Lease Arrears | Disputed | | | $155,380.79 |
| 4 | DeLage Landen Financial Services PO Box 41602 Philadelphia, PA 19101 | | Business Loan | | | | $78,917.97 |
| 5 | On Deck Capital, Inc. 901 N. Stuart Street Arlington, VA 22203 | | Business Loan | | | | $71,435.18 |
| 6 | Suntrust Bank PO Box 79079 Baltimore, MD 21279-3018 | | Commercial Note | | | | $40,560.75 |
| 7 | Liptz, Roberts & Marquez 5530 Wisconsin Avenue Suite 1100 Chevy Chase, MD 20815 | | Accounting services | | | | $37,676.68 |
| 8 | Aurum Labs 789 Tech Center Drive Unit C Durango, CO 81301 | | Lab Services | | | | $36,309.93 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Art Dental Lab<br>3852 Dulles South Court, Suite A<br>Chantilly, VA 20151 | | Services | Disputed | | | $21,115.12 |
| 10 | Atul Patel<br>P.O. Box 204<br>Fulton, MD 20759 | | Wages and benefits | Disputed | | | $11,400.00 |
| 11 | Henry Schein<br>Dept CH 10560<br>Palatine, IL 60055 | | Medical Equipment | Contingent Disputed Subject to Setoff | | | $9,141.09 |
| 12 | National Dentex Corporation<br>3910 RC Boulevard, Suite 1015<br>Palm Beach Gardens, FL 33410 | | Laboratory services | | | | $7,646.97 |
| 13 | Suntrust Bank<br>PO Box 79079<br>Baltimore, MD 21279 | | Business Line of Credit | | | | $7,071.91 |
| 14 | Keller Laboratories<br>160 Larkin Williams Industrial Ct.<br>Fenton, MO 63026 | | Lab services | | | | $6,583.76 |
| 15 | Trident Dental Lab<br>12000 Aviation Blvd.<br>Hawthorne, CA 90250 | | Lab services | | | | $4,930.16 |
| 16 | Glidewell Laboratories<br>4141 MacArthur Blvd<br>Newport Beach, CA 92660 | | Lab services | | | | $3,332.48 |
| 17 | Silvester Gonzalez Dental Lab<br>21713 Holdridge Road<br>Silver Spring, MD 20906 | | Lab services | | | | $3,143.44 |
| 18 | American Express<br>P.O. Box 1270<br>Newark, NJ 07101-1270 | | Credit card | | | | $2,244.40 |
| 19 | Pitney Bowes<br>c/o Caine & Weiner<br>PO Box 5010<br>Woodland Hills, VA 91365 | | Postage meter rental | | | | $1,030.93 |
| 20 | Dentsply IH, Inc.<br>590 Lincoln Street<br>Waltham, MA 02451 | | | | | | $99.00 |

# MOTOR VEHICLE LEASE AGREEMENT

**LEXUS FINANCIAL SERVICES**

Exhibit A

## 1. Parties

☒ Monthly-Pay Lease ☐ One-Pay Lease Lease Date: 04/11/2015

**LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS**
ART AND DENTISTRY LLC
ELLENA BRODSKY
6500 ROCK SPRING DR, STE 110,
Bethesda, County Of MONTGOMERY, MD 20817

**LESSOR (DEALER) NAME AND ADDRESS**
LEXUS OF ROCKVILLE
15501 FREDERICK ROAD
Rockville, MD 20855

**VEHICLE GARAGING ADDRESS**
6500 ROCK SPRING DR, STE 110
Bethesda, MD 20817

This is a Lease Agreement ("Lease") for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, and after assignment, to the Toyota Lease Trust ("TLT") and any subsequent assignee. Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") will be servicing this Lease on behalf of TLT. By signing this Lease, you are leasing this Vehicle according to all of the terms of this Lease.

## 2. Description of Leased Vehicle

You are leasing from us, and have received in satisfactory condition, the following Vehicle:

**Leased Vehicle**
2015 Lexus RX 350 AWD 4dr

| New, Used, or Demo | Vehicle Identification Number | Primary Use | Odometer Mileage |
|---|---|---|---|
| New | 132 | Business | 5 |

### FEDERAL CONSUMER LEASING ACT SEGREGATED DISCLOSURES

| 3. Amount Due at Lease Signing or Delivery (Itemized in Section 7) | 4. Payments | 5. Other Charges (Not Part of Your Monthly Payment or Total Lease Payment) | 6. Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| $ 1,975.00 | a. Monthly Payments (Monthly-Pay Lease) Your first Monthly Payment of $ 537.35 is due on 04/11/2015, followed by 35 payments of $ 537.35 due on the 11th of each month. The total of your Monthly Payments is: $ 19,344.60<br><br>b. Total Lease Payment (One-Pay Lease) Your Total Lease Payment of $ N/A is due on N/A | Disposition fee (if you do not purchase the Vehicle) $ 350.00<br><br>Total $ 350.00 | $ 21,132.25 |

### Itemization of Amount Due at Lease Signing or Delivery

**7. Amount Due at Lease Signing or Delivery**
| | | |
|---|---|---|
| a. Capitalized Cost Reduction | $ | 1,437.65 |
| b. First Monthly Payment | $ | 537.35 |
| c. Total One-Pay Lease Payment | $ | N/A |
| d. Refundable Security Deposit | $ | 0.00 |
| e. Title Fees | $ | N/A |
| f. Registration Fees | $ | N/A |
| g. License Fees | $ | N/A |
| h. Tax on Capitalized Cost Reduction | $ | N/A |
| i. Acquisition Fee | $ | N/A |
| j. N/A | $ | N/A |
| k. N/A | $ | N/A |
| l. N/A | $ | N/A |
| m. N/A | $ | N/A |
| n. Total | $ | 1,975.00 |

**8. How the Amount Due at Lease Signing or Delivery Will Be Paid**
| | | |
|---|---|---|
| a. Net Trade-in Allowance | $ | 475.00 |
| b. Rebates and Noncash Credits | $ | 1,500.00 |
| c. Amount to Be Paid in Cash | $ | 0.00 |
| d. Total | $ | 1,975.00 |

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and a service mark of Toyota Lease Trust.

6305MD (10/18/12)

Represents Redacted Information

True and Accurate Completed Copy - UCC Non-Authoritative Copy

# MOTOR VEHICLE LEASE AGREEMENT



**Your Payment Is Determined As Shown Below:**

**9. Payment Determination**

a. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 44,160.00) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13.   $ 46,469.06

b. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost.   – $ 1,437.65

c. **Adjusted Capitalized Cost.** The amount used in calculating your Base Periodic Payment.   = $ 45,031.41

d. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Periodic Payment.   – $ 30,009.24

e. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.   = $ 15,022.17

f. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts.   + $ 4,322.52

g. **Total of Base Periodic Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge.   = $ 19,344.69

h. **Lease Payments.** The number of periodic payments in your Lease.   ÷ 36

i. **Base Periodic Payment.**   = $ 537.35

j. **Monthly Sales/Use Tax.**   + $ N/A

k. N/A   + $ N/A

l. **Total Payment.** For **Monthly-Pay Leases**, this is your Total Monthly Payment. For **One-Pay Leases**, this is your Total One-Pay Lease Payment.   = $ 537.35

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**10. Excessive Wear and Use**
You will be responsible for excessive wear charges based on our standards for normal use and for mileage in excess of 22500 miles over the odometer reading disclosed in Section 2, at a rate of $ 0.25 per mile.

**11. Purchase Option at the End of the Lease Term**
You have the option to purchase the Vehicle at the end of the Lease Term for   $ 30,009.24

**12. Other Important Terms**
Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Lexus Financial Services is a trade name for Toyo[t]... Corporation and a service mark of Toyota Lease T...

# MOTOR VEHICLE LEASE AGREEMENT 

## Itemized Gross Capitalized Cost, Lease Term, Insurance, Fees, and Warranties

**13. Itemization of Gross Capitalized Cost**

You will pay for the following items over the Lease Term:

| | | |
|---|---|---:|
| a. | Agreed Upon Value of the Vehicle | $ 44,160.00 |
| b. | Taxes | + $ 978.06 |
| c. | Initial Title, License, and Registration Fees | + $ 307.00 |
| d. | Mechanical Breakdown Protection | + $ N/A |
| e. | Maintenance Agreement | + $ N/A |
| f. | Excess Wear and Use Protection Plan | + $ N/A |
| g. | Credit Life and/or Disability Insurance | + $ N/A |
| h. | Outstanding Prior Credit or Lease Balance | + $ N/A |
| i. | Acquisition Fee | + $ 700.00 |
| j. | Electronic Filing Fee [20.00] & TIRE FEE [4.00] | + $ 24.00 |
| k. | Document Fee | + $ 300.00 |
| l. | **Gross Capitalized Cost** | = $ 46,469.06 |

**14. Lease Term and Scheduled Maturity Date**

The Lease Term is  36  months, and the Scheduled Maturity Date is  04/10/2018.

**15. Required Vehicle Insurance**

You must provide the following insurance during the Lease Term and specify the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required:

a. primary automobile liability insurance with <u>minimum limits</u> for bodily injury or death of:
   i.  $   30,000.00 for any one person; and
   ii. $   60,000.00 for any one accident; and
   iii. $  15,000.00 for property damage; and
b. physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.

See Section 22 for more information.

You have provided us today with the following insurance information:

GEICO
Insurance Provider
DIRECT
Agent's Name
N/A
Agent's Address

Verified by Dealer [signature]

Lessee [signature]         Co-Lessee [signature]

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

**16. Estimated Official Fees and Taxes**

This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Payment (Section 9.I), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. **This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases.** See Section 26 for additional information.  **Estimated Total** $ 1,349.06

# MOTOR VEHICLE LEASE AGREEMENT



**17. Vehicle Maintenance and Damage**
You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You are responsible for all damage to the Vehicle and for its loss, seizure or theft. You must tell us immediately if any of these events happen and cooperate with your insurance company.

**18. Warranty**
If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless one of the following boxes is checked:
☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer
**Except for any express warranty above, YOU ARE LEASING THE VEHICLE "AS IS." WE MAKE NO WARRANTY AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. If the vehicle is new, and if it does not conform to all applicable warranties during the warranty period, you must report the nonconformity, defect or condition by giving written notice to the manufacturer, factory branch or Lessor by certified mail, return receipt requested.**

**19. Optional Insurance and Other Products**
You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision. These products will not be provided unless the appropriate box is checked, all information is filled in, you sign below, and you are accepted by the Provider. By signing for a product below, you agree that you have received a notice of the terms of the product, and you want to obtain the product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer).

Optional Credit Life Insurance and Credit Disability Insurance are not available with **One-Pay Leases**.

☐ **Optional Credit Life Insurance**
N/A
N/A
Insured(s)
$ N/A Beginning Coverage
N/A Provider
$ N/A Premium

Lessee: N/A (C)
Co-Lessee: N/A (C)

☐ **Optional Credit Disability Insurance**
N/A
N/A
Insured(s)
$ N/A Maximum Monthly Coverage
N/A Provider
$ N/A Premium

Lessee: N/A (D)
Co-Lessee: N/A (D)

☐ **Optional Mechanical Breakdown Protection**
N/A Miles/Coverage  N/A Months
N/A Provider
$ N/A Premium or Charge

Lessee: N/A (E)
Co-Lessee: N/A (E)

☐ **Optional Maintenance Agreement**
N/A Provider
$ N/A Premium or Charge

Lessee: N/A (F)
Co-Lessee: N/A (F)

☐ **Optional Excess Wear and Use Protection Plan**
N/A Provider
$ N/A Premium or Charge

Lessee: N/A (G)
Co-Lessee: N/A (G)

**Total Premiums and Charges** $ N/A

True and Accurate Completed Copy - UCC Non-Authoritative Copy
True and Accurate Completed Copy - UCC Non-Authoritative Copy

# MOTOR VEHICLE LEASE AGREEMENT



## YOUR OBLIGATIONS DURING THIS LEASE

20. **Prohibited Uses of the Vehicle.** You agree that you will not, nor permit others to:
    a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 22;
    b. alter the Vehicle without our written consent. Any accessions to the Vehicle become our property;
    c. subject the Vehicle to any lien, seizure or other involuntary transfer;
    d. use the Vehicle to transport goods or people for hire;
    e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
    f. take the Vehicle outside the United States (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance); or
    g. allow anyone else to regularly use the Vehicle without our written consent.
    **Assignment or subleasing by you of the Vehicle or Lease is strictly prohibited.**
21. **Title and Registration.** Legal title to the Vehicle will be in our name, and the Vehicle will be registered as we direct. You must promptly pay all title, registration, and license fees.
22. **Required Insurance.** We have the right to change the amounts of Required Insurance shown in Section 15. The limits we require may not be sufficient for your needs. See your insurance provider for more information. You may obtain the required coverages through any insurance company, agent, or broker you choose. The insurance policy must be acceptable to us, name the Toyota Lease Trust as **additional insured** and **loss payee**, and give us at least 10 days written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance.
23. **Charges for Late Payments.** For **Monthly-Pay Leases**, if we do not receive a full Monthly Payment within __10__ days after it is due, you must pay a late payment charge of __5.00__ % of the unpaid amount or $ __10.00__ , whichever is greater.
24. **Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, inoperative, experiences any mechanical problem, or does not perform satisfactorily. If you do not return the Vehicle by the Scheduled Maturity Date, you must continue to pay the Monthly Payment. However, continued payment does not mean you have our permission to keep the Vehicle. If you have a **One-Pay Lease**, the Monthly Payment is determined by dividing the Total Lease Payment (Section 9) by the number of months in the Lease Term (Section 14). Payments will be applied in the following order: past due payments, current payment due, late charges, other amounts due under this Lease.
25. **Change in Address.** You must notify us in writing within 30 days of any change in your address.
26. **Official Fees, Taxes and Fines.** You must promptly pay all official fees and taxes related to this Vehicle and this Lease, including title, license, and registration fees, and sales, use, excise, and personal property taxes. You must also promptly pay any fines incurred on the Vehicle such as traffic or parking tickets. Some bills for official fees and taxes may be sent to you for payment. Other bills may be paid by us on your behalf and we will charge you for such amounts. You must pay all fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended. We may charge you an estimated amount for the remaining fees and taxes at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess. We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less any amounts due under this Lease, to you. We may pay any title, registration, license fee, tax or fine which you fail to pay, and charge you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.
27. **Default and Loss of the Vehicle.** You will be in default if <u>any</u> of the following occur:
    * you fail to make any payment when it is due; or
    * you fail to keep any other agreement in this Lease; or
    * you provided false or misleading information when applying for this Lease; or
    * you become the subject of a bankruptcy or insolvency proceeding; or
    * the Vehicle is lost, stolen, seized, or damaged beyond reasonable repair.
    
    If you are in default we may do <u>any</u> or <u>all</u> of the following after giving any legally required notices, and after expiration of any legally required cure or reinstatement periods:
    a. terminate this Lease and your right to use the Vehicle;
    b. take possession of the Vehicle from your property or elsewhere, in any manner not prohibited by law;
    c. require you to pay the amounts set forth in Section 31;
    d. pursue any other remedy allowed by law; and
    e. require you to pay all of our expenses for taking these actions, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.
    
    If you are in default, you agree that we have all the rights and remedies provided in this Lease to the extent that such rights and remedies are consistent with state law. You agree that we have all the rights and remedies provided to lessors under state law. If we elect to end this Lease following your default, you agree to pay us the amounts provided for in this section as well as Section 31.
    
    If you are an individual leasing the Vehicle primarily for personal, family or household use, and we exercise our right to take possession of the Vehicle as set forth in Section 27.b above, we will deliver to you or send to your last known address a written notice which states:
    * your right to get back (redeem) the Vehicle,
    * the amount you must pay to redeem the Vehicle and the address where payment is to be made;
    * the exact location where the Vehicle is stored;
    * the rights as to a sale of the Vehicle; and
    * your liability for any deficiency.
    
    For 15 days after we give you the written notice described above, you will have the right to redeem the Vehicle and resume performance of this Lease. If you do not exercise this right to redeem and resume performance under the Lease within the 15 day period, this Lease will terminate. At termination

# MOTOR VEHICLE LEASE AGREEMENT



of this Lease we will sell the Vehicle, and you will be liable for any deficiency (see Section 31) and any damage cause to us because of your default. We may also charge interest in accordance with applicable law on any amounts you owe us after your default.

This right to redeem the Vehicle and resume performance of this Lease does not apply if:

- the date of the default that led to the present taking of the Vehicle was within 18 months of another retaking of the Vehicle by us; or
- you were guilty of fraudulent conduct, you intentionally or wrongfully concealed the Vehicle, you removed, damaged or destroyed the Vehicle, or attempted to do so, and the Vehicle was retaken by us because of that conduct.

## ENDING YOUR LEASE

28. **Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 27), and you must pay us the amounts set forth in Section 27(e) and Section 31.

29. **Early Termination by You.** If you are not in default, you may terminate your lease at any time prior to the end of the Lease, provided you do so in accordance with the terms contained in Sections 30 or 31 of this Lease.

    **If you terminate a Monthly-Pay Lease early and do not specify the Remaining Payments Liability at the time you turn in the Vehicle, the Standard Early Termination Liability will automatically be applied. The Standard Early Termination Liability always applies to One-Pay Leases and leases in default.**

30. **Remaining Payments Liability (Option 1—Monthly-Pay Leases Only).** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us at the location we specify and pay us, upon demand, the following amounts:

    a. any Monthly Payments that have become due and are unpaid at termination; *plus,*
    b. any remaining Monthly Payments from date of termination to the end of this Lease; *plus,*
    c. any other amounts you owe under this Lease; *plus,*
    d. any charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); *plus,*
    e. any official fees or taxes charged in connection with the Lease termination; **minus,**
    f. any remaining Refundable Security Deposit (Section 35) and any amounts we receive from cancelled Optional Insurance or Other Products (Section 37).

31. **Standard Early Termination Liability (Option 2—All Leases and Leases in Default).** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us at a location we specify and pay us, upon demand, the following amounts:

    a. any Monthly Payments that have become due and are unpaid at termination (**Monthly-Pay Leases** only); *plus,*
    b. an Early Termination Charge equal to the difference, if any, between the "Adjusted Lease Balance" and the "Fair Market Value" (as defined below); *plus,*
    c. any other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); *plus,*
    d. any out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; *plus,*
    e. any official fees or taxes charged in connection with the Lease termination; **minus,**
    f. any remaining Refundable Security Deposit (Section 35), or refund we receive from Optional Insurance or Other Products (Section 37).

    The "Adjusted Lease Balance" is calculated for a **Monthly-Pay Lease** by adding the remaining Base Periodic Payments (Section 9.i) not yet due and the Residual Value (Section 9.d), then subtracting the unearned portion of the Rent Charge, calculated using the "constant yield" method (a method of earning rent charges in which the rent charge earned each month is proportional to the remaining lease balance). For a **One-Pay Lease**, the Adjusted Lease Balance is equal to the Residual Value less the unearned portion of the Rent Charge. To determine the unearned portion of the Rent Charge, first determine the Monthly Rent Charge by dividing the Total Rent Charge (Section 9.f) by the number of months in the Lease Term (Section 14). The unearned Rent Charge is the Monthly Rent Charge multiplied by the number of months from the date of termination to the end of the Lease Term. To determine the number of remaining Monthly Payments from the date of termination to the end of this Lease, assume that a Monthly Payment (equal to Total of Base Periodic Payments (Section 9.g) divided by the Lease Terms (Section 14) would be due on the Lease Date and on the same date of each subsequent month.

    The "Fair Market Value" is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by an appraisal of the wholesale value of the Vehicle, which you may obtain at your own expense from a professional independent appraiser agreed to by us. If you obtain this appraisal, the appraised value will be used as the Fair Market Value. The appraisal must be obtained within 10 days after you return the Vehicle to us.

    If the Vehicle is subject to a total loss or theft resulting in a total loss, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required Insurance. If there are no insurance proceeds the Fair Market Value will be zero. If this Lease is terminated as a result of a total loss or a theft resulting in a total loss of the Vehicle and you have maintained the Required Insurance set forth in Section 15, we will waive the Early Termination Charge set forth in Section 31b, after we receive the insurance proceeds and you have paid any deductible amounts.

32. **Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and instructed us not to release the Vehicle to you). The price to purchase the Vehicle at the Scheduled Maturity Date is the Purchase Option Price shown in Section 11, plus 32a, 32b and 32c, below. The price to purchase the Vehicle during the Lease is:

    a. any Monthly Payments that have become due, or other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); *plus,*
    b. any official fees and taxes, or documentary fees charged in connection with the purchase; *plus,*
    c. any amounts necessary to meet any legal selling requirements; *plus,*
    d. the Adjusted Lease Balance as defined in Section 31.

    As part of a like-k[redacted]
    hereby notified tha[redacted]

Lexus Financial Services is [redacted]
Corporation and a service [redacted]

# MOTOR VEHICLE LEASE AGREEMENT



33. **Obligations if You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at the location we specify and pay us, upon demand, the following amounts:
    a. any Monthly Payments or other amounts due under this Lease; *plus*,
    b. any official fees or taxes charged in connection with the Lease termination; *plus*,
    c. any Excessive Wear and Use charges disclosed in Section 34; *plus*,
    d. any excess mileage charge disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

34. **Excessive Wear and Use Charges.** If you do not purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date, or if you elect to terminate your Lease pursuant to the terms of the Lease, you are responsible for the estimated cost to repair damage (including diagnostic cost if any) to the Vehicle which is excessive wear and use (even if we do not repair the Vehicle).

    Excessive wear and use may include but is not limited to certain damage such as:
    a. inoperative mechanical and electrical parts;
    b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle pursuant to the terms of the Lease;
    c. damage to the body, lights, trim or paint;
    d. damaged, broken or missing glass;
    e. torn, damaged or stained interior;
    f. damage from flood, water, hail or sand;
    g. damage from removal of equipment or signs placed on the Vehicle;
    h. missing equipment, parts and accessories, including missing keys or remote entry devices; or
    i. any wear or damage to any part of the tire that doesn't allow the tire to meet the manufacturer's guidelines for safe operation, or any mismatched tire sizes in a set of 5 (or 4 with any emergency spare if the vehicle was equipped with one).

### ADDITIONAL INFORMATION

35. **Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. If you elect to purchase your Vehicle, your security deposit may be applied by us to the amount you owe to purchase your Vehicle. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase, or profits will be paid to you on the security deposit.

36. **Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TLT.

37. **Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

38. **Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

39. **Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information.

40. **Liability.** Lessee and Co-Lessee are jointly and severally liable. If there is both a Lessee and Co-Lessee signing this Lease, we can release, waive, or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

41. **Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on the Lease, unless you give us a different address in writing. All correspondence and notices will be given solely in LFS' name, and will be given on behalf of TLT.

42. **Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of the Lease will be enforceable.

43. **No Waiver by Us.** If we delay or refrain from exercising our rights under this Lease, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

44. **Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

45. **Electronic Records and Signatures and Conversion to Paper.** You agree to use electronic records and electronic signatures to document this contract. Your electronic signatures will have the same effect as signatures on a paper contract.

    There will be one authoritative copy of this contract. It will be the electronic copy in a document management system we designate for storing it. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper.

**NOTICE:**

**NOTICE: ANY HOLDER OF THIS CONSUMER LEASE IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE LESSEE COULD ASSERT AGAINST THE LESSOR OF THE MOTOR VEHICLE. RECOVERY HEREUNDER BY THE LESSEE SHALL NOT EXCEED AMOUNTS PAID BY THE LESSEE UNDER THE LEASE.**

This preceding notice applies only if Subtitle 20 of Title 14 of the Maryland Commercial Law Code applies to this Lease.

# MOTOR VEHICLE LEASE AGREEMENT



## ARBITRATION

**46. Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, and the following Covered Parties: the Toyota Lease Trust, Toyota Motor Credit Corporation and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing. However, only a court (and not an arbitrator) shall determine the validity and effect of this Provision's ban on class actions, class-wide arbitrations and similar proceedings (which appears in bold type below) (the "Class Action Waiver"). Any arbitration shall be administered by JAMS (its rules can be obtained by contacting it at 1920 Main Street, Suite 300, Irvine, CA 92614); provided that no arbitration may be administered without the consent of all parties to the arbitration by any organization that has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Provision. In all cases, the arbitrator must be a lawyer with at least 10 years of experience or a retired judge. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"); (ii) the Administrator's rules and procedures in effect at the time the claim is filed; and (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not by any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. The Arbitrator shall follow applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Administrator or Arbitrator, or if you believe that such fees are or will be prohibitively expensive or excessive, we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In any event, if applicable law requires us and the Covered Parties to pay or reimburse you for any such fees, such law will control.

Each party shall bear the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or the Lease gives a party the right to recover any of those fees from the other party. **We, the Covered Parties and you are prohibited from participating in a class action or private attorney general action in court or class-wide arbitration with respect to any claims we, the Covered Parties or you have asserted against one another or other beneficiaries of this Provision. There should also be no joinder or consolidation of parties, except for multiple parties to this Lease.** In the event of a conflict or inconsistency between this Provision, on the one hand, and the applicable arbitration rules of the Administrator or the other provisions of the Lease on the other hand, this Provision shall govern. If any portion of this Provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the other provisions of this Provision or this Lease; provided however, that if the Class Action Waiver is deemed invalid, then this entire Provision shall be null and void, subject to the right of any party to appeal the determination of invalidity with respect to the Class Action Waiver. You and we retain rights to self-help remedies, such as repossession of the Vehicle. (However, the other party against whom the self-help remedy is sought may initiate an action in court only to enjoin the party from using a self-help remedy. No monetary relief may be sought in such a court action.) You also will not be subject to this Provision for any individual claim brought by you in small claims court or your state's equivalent court, unless such claim is transferred, removed or appealed to a different court. With respect to any claims covered by this Provision, a party who has asserted a claim in a lawsuit or in any action for replevin in court may elect arbitration, or may be required to arbitrate, with respect to any claim(s) subsequently asserted in that lawsuit by that party or any other party(ies). IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ADMINISTRATOR; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT FOR A LIMITED RIGHT TO APPEAL AS PROVIDED IN THE FAA. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION. This Provision is made pursuant to a transaction in interstate commerce, and shall be governed by the FAA. Judgment upon the award may be entered in any court having jurisdiction. This Provision will survive your full payment of the Lease, our sale or transfer of the Lease, any repossession of the Vehicle, and your (or our) bankruptcy.

**By signing below, you agree that at the request of either you or us any controversy or claim between you and us shall be determined by neutral binding arbitration in accordance with the terms of this Arbitration Provision.**

Lessee *[signature]*    Co-Lessee *[signature]*

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and a service mark of Toyota Lease

(10/18/12)

# MOTOR VEHICLE LEASE AGREEMENT



## LEASE SIGNATURES AND NOTICES

**NOTICE TO LESSEE AND CO-LESSEE:** (1) THIS IS A LEASE. YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE, IF THIS LEASE CONTAINS A PURCHASE OPTION; (2) DO NOT SIGN THIS LEASE BEFORE YOU READ ALL NINE PAGES OR IF IT CONTAINS ANY BLANK SPACES; (3) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE WHEN YOU SIGN IT; (4) EARLY TERMINATION MAY REQUIRE YOU TO PAY A SUBSTANTIAL AMOUNT.

By signing below, you acknowledge and agree that: (1) this is a lease, and you have no ownership interest in the Vehicle unless or until you exercise your option to purchase the Vehicle as set forth herein; (2) you have read the entire Lease consisting of nine pages; (3) you agree to all the provisions of the Lease; (4) this Lease contains the entire agreement for the lease of the Vehicle, and any change to the Lease must be in writing and signed by you and us; and (5) you have received a completely filled-in copy of this Lease for your records.

Lessee: *[signature]*
Name: ART AND DENTISTRY LLC

Co-Lessee: *[signature]*
Name: ELLENA BRODSKY

**Notice Regarding Assignment.** As part of a like-kind exchange program, Toyota Motor Credit Corporation ("TMCC") has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor is hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle.

The Lessor accepts this Lease and assigns to TLT all its rights, title and interest in the Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to TLT to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

Lessor: *[signature]*
Name: LEXUS OF ROCKVILLE

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and a service mark of Toyota Lease Trust.

True and Accurate Completed Copy - UCC Non-Authoritative Copy



# MARYLAND CERTIFICATE OF TITLE
DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR VOIDS.

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | |
|---|---|---|---|---|---|---|---|
| 1132 | 15 | LEXS | TK | M | 5 | A | LEASED |

| EXCEPT. | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | -3700 | 00N/A | $50.50 | N/A | 04/11/15 |

OWNER'S SOUNDEX / DRIVER'S LICENSE NO.　　CO OWNER'S SOUNDEX / DRIVER'S LICENSE NO.

CODES
A. Actual Mileage
B. Exceeds Mechanical Limits
C. Not Actual Mileage

TOYOTA LEASE TRUST
C/O TOYOTA LEASE TRUST
500 RED BROOK BLVD
OWINGS MILLS  MD 21117

I THE UNDERSIGNED HEREBY CERTIFY THAT AN APPLICATION FOR CERTIFICATE OF TITLE HAS BEEN MADE FOR THE VEHICLE DESCRIBED HEREON, PURSUANT TO THE PROVISIONS OF THE MOTOR VEHICLE LAWS OF THIS STATE, AND THE APPLICANT NAMED ON THE FACE HEREOF HAS BEEN DULY RECORDED AS THE LAWFUL OWNER OF SAID VEHICLE.

THE ADMINISTRATION WILL NOT BE RESPONSIBLE FOR FALSE OR FRAUDULENT ODOMETER STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE OR FOR ERRORS MADE IN RECORDING BY THE ADMINISTRATION.

NAME(S) AND ADDRESS OF SECURED PARTIES IN RECORDED ORDER

TOYOTA LEASE TRUST
P O BOX C22202
OWINGS MILLS  MD 21117

LIEN RELEASE

MVA USE ONLY
OFFICIALLY ISSUED ON THE DATE SET FORTH ABOVE

ADMINISTRATOR OF MOTOR VEHICLES

THIS TITLE CONTAINS AN EAGLE WATERMARK WHICH IS VISIBLE WHEN HELD TO LIGHT

**Represents Redacted Information**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Creditor: | Toyota Motor Credit Corporation | | | | | | **PAYMENTS RECEIVED** |
| Debtor: | Art & DENTISTRY LLC | | | | | | Lease Status as of October 25, 2017 |
| Case No.: | 17-22579 | | | | | | |
| Lease No.: | ▓ | | | | | | |
| Our File No.: | ▓ | | | | | | |
| Collateral: | 2015 LEXUS   RX350 ▓ 1132 | | | | | | |

Exhibit 1

| Date Received | DR# | Amount Received | Due Date | Amount Due | DT | NSF/Late Charges Assessed | Paid Over/Short |
|---|---|---|---|---|---|---|---|
| **Regular Payments** | | | | | | | |
| 05/21/2015 | 1 | $537.35 | 05/11/2015 | $537.35 | | | $0.00 |
| 06/30/2015 | 1 | $0.00 | 06/11/2015 | $537.35 | | | ($537.35) |
| 07/12/2015 | 1 | $537.35 | 07/11/2015 | $537.35 | | | $0.00 |
| 08/14/2015 | 1 | $537.35 | 08/11/2015 | $537.35 | | | $0.00 |
| 09/23/2015 | 1 | $1,074.70 | 09/11/2015 | $537.35 | | | $537.35 |
| 10/30/2015 | 1 | $0.00 | 10/11/2015 | $537.35 | | | ($537.35) |
| 11/30/2015 | 1 | $0.00 | 11/11/2015 | $537.35 | | | ($537.35) |
| 12/11/2015 | 1 | $1,585.18 | 12/11/2015 | $537.35 | | | $1,047.83 |
| 01/30/2016 | 1 | $0.00 | 01/11/2016 | $537.35 | | | ($537.35) |
| 02/19/2016 | 1 | $1,101.57 | 02/11/2016 | $537.35 | | | $564.22 |
| 03/30/2016 | 1 | $0.00 | 03/11/2016 | $537.35 | | | ($537.35) |
| 04/07/2016 | 1 | $537.35 | 04/11/2016 | $537.35 | | | $0.00 |
| 05/30/2016 | 1 | $0.00 | 05/11/2016 | $537.35 | | | ($537.35) |
| 06/06/2016 | 1 | $1,074.70 | 06/11/2016 | $537.35 | | | $537.35 |
| 07/14/2016 | 1 | $1,074.70 | 07/11/2016 | $537.35 | | | $537.35 |
| 08/11/2016 | 1 | $537.35 | 08/11/2016 | $537.35 | | | $0.00 |
| 09/23/2016 | 1 | $537.35 | 09/11/2016 | $537.35 | | | $0.00 |
| 10/30/2016 | 1 | $0.00 | 10/11/2016 | $537.35 | | | ($537.35) |
| 11/07/2016 | 1 | $600.00 | 11/11/2016 | $537.35 | | | $62.65 |
| 12/30/2016 | 1 | $0.00 | 12/11/2016 | $537.35 | | | ($537.35) |
| 01/09/2017 | 1 | $1,012.05 | 01/11/2017 | $537.35 | | | $474.70 |
| 02/28/2017 | 1 | $1,074.70 | 02/11/2017 | $537.35 | | | $537.35 |
| 03/30/2017 | 1 | $537.35 | 03/11/2017 | $537.35 | | | $0.00 |
| 04/30/2017 | 1 | $0.00 | 04/11/2017 | $537.35 | | | ($537.35) |
| 05/30/2017 | 1 | $0.00 | 05/11/2017 | $537.35 | | | ($537.35) |
| 06/30/2017 | 1 | $0.00 | 06/11/2017 | $537.35 | | | ($537.35) |
| 07/05/2017 | 1 | $1,074.70 | 07/11/2017 | $537.35 | | | $537.35 |
| 08/30/2017 | 1 | $0.00 | 08/11/2017 | $537.35 | | | ($537.35) |
| 09/30/2017 | 1 | $0.00 | 09/11/2017 | $537.35 | | | ($537.35) |
| 10/03/2017 | 1 | $1,074.70 | 10/11/2017 | $537.35 | | | $537.35 |
| **Total:** | | **$14,508.45** | | **$16,120.50** | | **$0.00** | **($1,612.05)** |

▓ Represents Redacted Information

# Exhibit B

## Vehicle Information

2015 Lexus RX Utility 4D RX350 AWD
3.5L V6
Eastern
October 23, 2017
1132
42,500
$42,195
$48,875
4,343



## NADA Used Cars/Trucks Values

| | | | | |
|---|---|---|---|---|
| Rough | $25,175 | N/A | N/A | **$25,175** |
| Average | $27,450 | N/A | N/A | **$27,450** |
| Clean | $29,350 | N/A | N/A | **$29,350** |
| Clean Loan | $26,425 | N/A | N/A | **$26,425** |
| Clean Retail | $32,475 | N/A | N/A | **$32,475** |

Represents Redacted Information